# UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

IN RE:                                    *
                                          *
**GALEN TYREE MITCHELL**                  *
                                          *
                                          *          **CASE NO. 02-10259-WSS-13**
                                          *
                                          *
                    Debtor                *

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Comes now your Movant, **Citizens Bank and Trust** and would show unto your Honor the following:

1.      That **Citizens Bank and Trust** is the owner of a mortgage on the property owned by the Debtor covering the following described property located in **Baldwin County, Alabama:**

**SEE ATTACHED LEGAL DESCRIPTION MARKED EXHIBIT "A"**

The street address of the property is:

**26152 Jackson Lane
Daphne, Alabama 36526**

2.      That the debtor is in arrears on the monthly payments on said mortgage and that there is due post-petition arrearage from **April 2004** through **June 2004** payments of **$4,054.34** including attorney's fees and costs. The unpaid principal balance on said mortgage is approximately **$89,076.28.** Also, there is little or no equity for the debtor or trustee.

3. That said mortgage is recorded in the Office of the Judge of Probate of **Baldwin County, Alabama,** and a copy of said mortgage is attached hereto and marked "Exhibit 1". Also attached is a copy of the mortgage assignments marked "Exhibit 2" and "Exhibit 3" and a copy of the debtor's note marked "Exhibit 4".

4.      That under Order of this Court your Movant is restrained from beginning foreclosure proceedings and if your Movant is not permitted to begin foreclosure proceedings in order to protect its interest, irreparable harm will result to your Movant.

**NOW THEREFORE, PREMISES CONSIDERED**, your Movant prays that after proper notice to those entitled to receive notice that your Honor will set this matter down for a hearing and upon the conclusion thereof, issue an Order permitting your Movant to proceed with foreclosure of said mortgage.

**W. L. Longshore, III**
**Attorney for Movant**

**OF COUNSEL:**
**LONGSHORE, BUCK & LONGSHORE, P.C.**
**2009 Second Avenue North**
**Birmingham, Alabama 35203**
**Phone: (205) 252-7661**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing motion for relief from automatic stay by depositing same in the U. S. Mail, first class, postage prepaid, to the following:

**Galen Tyree Mitchell**
**P.O. Box 253**
**Daphne, Alabama  36526**

**Angela M. Cooper, Attorney**
**851 South Beltline Highway**
**Suite 910**
**Birmingham, Alabama  36606**

**John C. McAleer, III, Trustee**
**P.O. Box 1884**
**Mobile, Alabama  36633**

on this the _____ day of June, 2004.

**W. L. Longshore, III**

Prepared by:

**MERITAGE MORTGAGE CORPORATION**
**5665 SOUTHWEST MEADOWS ROAD, SUITE 350**
**LAKE OSWEGO, OR 97035**

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

Loan Number: 17990400

THIS MORTGAGE ("Security Instrument") is given on     MAY 10, 1999
GALEN T. MITCHELL AND KARLA P. MITCHELL, HUSBAND AND WIFE    . The grantor is

("Borrower"). This Security Instrument is given to
      MERITAGE MORTGAGE CORPORATION,
      AN OREGON CORPORATION

which is organized and existing under the laws of
address is 5665 SOUTHWEST MEADOWS ROAD, SUITE 350    OREGON    , and whose
LAKE OSWEGO, OR 97035
Ninety Thousand Two Hundred Fifty & 00/100    ("Lender"). Borrower owes Lender the principal sum of

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on    JUNE 01, 2029
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's
successors and assigns, with power of sale, the following described property located in
      BALDWIN
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.    County, Alabama:

Parcel Number: 43-05-15-0-000-019.008

which has the address of  26152 JACKSON LANE, DAPHNE
Alabama  36526    [Zip Code]  ("Property Address");    [Street, City],
**ALABAMA**-Single Family-FNMA/FHLMC UNIFORM
    **INSTRUMENT** Form 3001 9/90
-6H(AL) (9403).02  Amended 12/93
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6    Initials: GTM
    KPM
DDS-ALV

State of Alabama, Baldwin County
I certify this instrument was filed
and taxes collected on:

1999 May  -12  2:22PM

Instrument Number 492536 Pages 13
Recording  32.50 Mortgage  135.45
Deed       Min Tax
Index      DP    1.00
Archive
Adrian T. Johns, Judge of Probate

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-6H(AL) (9403).02    Page 2 of 8    Form 3001   9/90

Initials: CTh
          KPh

005-ALV

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

-6H(AL) (9403).02

Page 3 of 8

Form 3001 9/90

Initials:

DDS-ALY

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

-6H(AL) (9403).02                          Page 4 of 6                          Form 3001  9/90

DO9-ALV                                                                          Initials: QTT
                                                                                 KPM

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

-6H(AL) (94031.02

Page 5 of 6

Form 3001 9/90

Initials: ___

DDS-ALV

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in BALDWIN County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _Galen T. Mitchell_ _____ (Seal)
GALEN T. MITCHELL    -Borrower

_____     _Karla P. Mitchell_ _____ (Seal)
KARLA P. MITCHELL    -Borrower

_____ (Seal)     _____ (Seal)
-Borrower    -Borrower

STATE OF ALABAMA,

Baldwin      County ss:

On this   10th   day of   May  , 1999  , I, the undersigned , a Notary Public in and for said county and in said state, hereby certify that Galen T. Mitchell and Karla P. Mitchell, husband and wife

whose name(s) are signed to the foregoing conveyance, and who are known to me, acknowledged before me that, being informed of the contents of the conveyance, they executed the same voluntarily and as their act on the day the same bears date.

Given under my hand and seal of office this 10th day of May, 1999

My Commission Expires: 1/15/2001

_Rita B. Green_
Notary Public

This instrument was prepared by Meritage Mortgage Corporation
5665 Southwest Meadows Road, Suite 350
Lake Oswego, OR 97035

-6H(AL) (9403).02     Form 3001 9/90

OCS-ALV

EXHIBIT "A"

Commence at a railroad spike marker at the Southwest corner of Section 15, Township 5 South, Range 2 East, and run thence East along the South boundary of said Section 15, a distance of 804.38 feet; thence run North 00 degrees 07' 45" East, 40 feet to a point on the North margin of County Highway Number 64; thence run East along the North margin of said County Highway Number 64, a distance of 231.13 feet; thence run North 00 degrees 07' 45" West, 276.3 feet; thence run East 154.09 feet to a 1" square iron marker; thence run North 00 degrees 07' 45" West, along and with an old fence, 252.6 feet to the point of beginning; thence continue North 00 degrees 07' 45" West, along and with an old fence 217.8 feet to a crimp top iron pipe marker; thence run North 04 degrees 54' West, along and with an old fence, 200.35 feet to a crimp top iron pipe marker; thence run South 43 degrees 22' 45" West, 191.63 feet; thence run Southeastwardly, Southwardly and Southwestwardly along a cul-de-sac having a radius of 50 feet, an arc distance of 103.89 feet; thence run South 00 degrees 07' 45" East, 84.06 feet; thence run South 12 degrees 56' West, 113.08 feet; thence run East 193.57 feet to the point of beginning. Parcel contains 1.28 acres, more or less and lies in the Southwest Quarter of the Southwest Quarter of Section 15, Township 5 South, Range 2 East, Baldwin County, Alabama.

Instrument #9536 Page 8of 13

# ADJUSTABLE RATE RIDER

### (LIBOR 6 Month Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 10TH day of MAY, 1999        and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to:

### MERITAGE MORTGAGE CORPORATION, AN OREGON CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 26152 JACKSON LANE,
### DAPHNE, AL  36526
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

DDS-WMK                              Page 1 of 4

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   The Note provides for an initial interest rate of  9.625 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the first day of JUNE, 2001                , and on that day every 6TH  month thereafter. Each date on which my interest rate could change is called a "Change Date."
   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London Market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND ONE QUARTER                        percentage points ( 6.250 %) to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

DDS-WMK                                    Page 2 of 4

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.625 % or less than 9.625 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND ONE HALF percentage point(s) 1.500 % from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.625 % , or less than 9.625 % .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

DDS-WMK

Page 3 of 4

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Galen T. Mitchell_ _____  10 MAY 99 _____ (SEAL)
GALEN T. MITCHELL                                    DATE

_Karla P. Mitchell_ _____  May 10, 99 _____ (SEAL)
KARLA P. MITCHELL                                    DATE

DDS-WMK

# ARBITRATION RIDER

THIS RIDER is made this 10th day of May, 1999 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to

MERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

26152 JACKSON LANE
DAPHNE, AL 36526

*[Property address]*

In consideration of Lender's extension of credit, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, it is further agreed as follows:

**Definitions for Arbitration Agreement.** As used in this Arbitration Agreement ("Agreement"), the following definitions will apply:

"You" or "Your" means any or all Borrower(s) who execute this Agreement, and their heirs, survivors, assigns, and representatives.

"We" or "Us" means Lender, its corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, officers, and representatives (whether acting in their corporate or individual capacity).

"Credit Transaction" means the obligation, or proposed obligation, identified by the above-referenced Loan Number and the notes, security agreements, application and other related documents, and any modification, extension or forbearance of the obligation.

"Claim" means any case, controversy, dispute, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything arising out of or relating to: this Agreement; the Credit Transaction; any insurance, service, or product that is offered by Us in connection with the Credit Transaction; any insurance, service, or product that is offered by Us in connection with the Credit Transaction, and any associated fees or charges; any documents or instruments that contain information about the Credit Transaction, or any associated insurance, service, or product; any act or omission concerning servicing, collecting, or enforcing the Credit Transaction; or any act or omission concerning any Claim.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** All disputes, claims, or controversies arising from or related to the loan evidenced by the Note, including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§1, et seq.) and the Code of Procedure of the National Arbitration Forum as in effect as of the date of this agreement. Copies of rules and forms can be obtained and any claims can be filed at any National Arbitration Forum office, www.arb-forum.com or at P.O. Box 50191, Minneapolis, MN 55405. Any arbitration hearing shall be conducted in the jurisdiction in which the Borrower signs this agreement, unless a different location is agreed to by Borrower and Lender. The arbitrator shall set forth in the award findings of fact and conclusions of law supporting the decision, which must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subjected

DDS-MTR                                          Page 1 of 3

to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender. Any party to this Agreement may bring an action to compel arbitration of any Claim, and/or to stay the litigation of any Claims (except Excluded Claims) pending arbitration, in any court having jurisdiction. Such motion may be brought at any time, even if a Claim is part of a lawsuit, until the entry of a final judgment. Examples of Claims that are governed by this Agreement include, without limitation, those involving: the Truth in Lending Act and Regulation Z; the Equal Credit Opportunity Act and Regulation B; the Real Estate Settlement Procedures Act and Regulation X; state insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts; any other federal or state consumer protection statute or regulations; any party's execution of this Agreement and/or willingness to be bound by its terms and Agreements; or any dispute about making, closing servicing, collecting, or enforcing the Credit Transaction.

**EXCLUSIONS FROM ARBITRATION.** This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lender's Rights in the Property" contained in the Security Instrument or (c) exercise of the right under the terms of the Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein; (d) any action to effect a judicial or non-judicial foreclosure or to establish a deficiency judgment; (e) any unlawful detainer or other summary proceeding to secure possession of real property securing the Credit Transaction; (f) bankruptcy proceeding other than adversary proceedings; (g) any action for interpleader; and/or (h) any action brought in small claims court where all parties seek monetary damages in the aggregate or $5,000.00 or less in total damages (compensatory and punitive), costs and fees.

No provision of this agreement shall limit the right of the Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate".

NOTICE: BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS DESCRIBED IN THE ARBITRATION OF DISPUTES SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. DISCOVERY IN ARBITRATION PROCEEDINGS IS LIMITED IN THE MANNER PROVIDED BY THIS AGREEMENT.
BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

_Galen T. Mitchell_      _12 may 99_
GALEN T. MITCHELL        DATE

_Karla P. Mitchell_    _May 10, 99_
KARLA P. MITCHELL        DATE

DDS-MTR         Page 2 of 3

STATE OF ALABAMA
COUNTY OF  BALDWIN

LOAN #: _____
POOL #:  M6L
RBMG LOAN #:  254783
INV #: _____

ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned,  Resource Bancshares Mortgage Group, Inc.
a Delaware Corporation
assign unto    *CITIZENS BANK AND TRUST COMPANY*   does hereby grant, bargain, sell, convey and
that certain mortgage executed by    successors and assigns,
GALEN T MITCHELL AND KARLA P. MITCHELL

dated  05/10/1999  and recorded in the Office of the Judge of Probate of
BALDWIN                    County, Alabama in Mortgage Book/
492536     ,  Page/        ,  on  05/12/1999                     ,  Doc./

together with the debt thereby secured, the note therein described and all Interest of the undersigned in and
to the lands and property conveyed by said mortgage.

Legal Description:
NOT REQUIRED BY COUNTY

IN WITNESS WHEREOF, the said  Resource Bancshares Mortgage Group, Inc.                    has
caused this instrument to be executed in its name by    Denise Easterling
its    Assistant Vice President          and its corporate seal is hereto affixed and attested by
Nancy Cayruth                    its    Assistant Secretary
thereunto duly authorized.                                both of whom are

ATTEST:

Nancy Cayruth                    Resource Bancshares Mortgage Group, Inc.
Assistant Secretary

Denise Easterling
Assistant Vice President

STATE OF  SC
COUNTY OF  Richland

I, the undersigned, a Notary Public in and for said County and said State, hereby certify that
Denise Easterling                    whose name as    Assistant Vice President          of
a Delaware Corporation
Resource Bancshares Mortgage Group, Inc.
is signed to the foregoing Assignment of Mortgage, and who is known to me, acknowledged before me on
this day that, being informed of the contents of said Assignment, s/he, as such officer and with full authority,
executed the same voluntarily for and as the act of said corporation.

GIVEN under my hand and official seal this the    February 15, 2000

Winifred Davis                    Notary Public
My Commission Expires:    03/23/2008

Prepared by de return to:
Resource Bancshares Mortgage Group, Inc.
7909 Parklane Road Columbia SC 29223-0000
1(800)933-2890 EXT.

02/15/2000, MERIT 49 02/00

RECORD & RETURN TO:
CITIZENS BANK & TRUST COMPANY
CAPITAL LENDING DIVISION
PO BOX 412
MARYVILLE, MO. 64468

State of Alabama, Baldwin County
I certify this instrument was filed
and taxes collected on:

2000 February -22   1:18PM

Instrument Number 534003 Pages  1
Recording     2.50  Mortgage
Deed                Min Tax
Index          .50            1.00
Archive
Adrian T. Johns, Judge of Probate

534003

98-5156

KC

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:
MERITAGE MORTGAGE CORPORATION
5665 SOUTHWEST MEADOWS ROAD, SUITE 350
LAKE OSWEGO, OR 97035

254783

Case No.
Loan No. 17990400

NOTE: After having been recorded, this Assignment should be kept with the Mortgage hereby assigned.

## ASSIGNMENT OF REAL ESTATE MORTGAGE

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
RESOURCE BANCSHARES MORTGAGE GROUP INC.

all the rights, title and interest of the undersigned in and to that certain Real Estate Mortgage executed by
GALEN T. MITCHELL AND KARLA P. MITCHELL, HUSBAND AND WIFE

and dated MAY 10, 1999                    , to
MERITAGE MORTGAGE CORPORATION.
AN OREGON CORPORATION
a corporation organized under the laws of OREGON
of business is 5665 SOUTHWEST MEADOWS ROAD, SUITE 350                    , and whose principal place
LAKE OSWEGO, OR 97035
and recorded in Book/Volume No. CONCURRENTLY
BALDWIN                    County Records, State of ALABAMA , page(s) HEREWITH                    , as Document No.
follows:                                                                                      described hereinafter as
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

492537

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Real Estate Mortgage.

Dated this 10TH   day of MAY, 1999

MERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION

By: _David J. Stockley_
DAVID J. STOCKLEY, ASSISTANT VICE PRESIDENT

By: _____

STATE OF ALABAMA
                                                    SS:
COUNTY OF BALDWIN

This INSTRUMENT was acknowledged before me on MAY 10
by DAVID J. STOCKLEY                                                            , 1999
as ASSISTANT VICE PRESIDENT
of MERITAGE MORTGAGE CORPORATION.

                                                    _____
                                                    Signature of notarial officer
(Seal, if any)
                                                    My commission expires: _____

State of Alabama, Baldwin County
I certify this instrument was filed
and taxes collected on:

1999 May   -12  2:22PM

Instrument Number 492537 Pages   2
Recording    5.00 Mortgage
Deed              Min Tax
Index             DP          1.00
Archive
Adrian T. Johns, Judge of Probate

DDS-FT2

# ADJUSTABLE RATE NOTE
### (LIBOR 6 Month Index - Rate Caps)

MAY 1 3 1999

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

MAY 10, 1999        DAPHNE        ALABAMA
            [City]             [State]

26152 JACKSON LANE
DAPHNE, ALABAMA 36526
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $   90,250.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

MERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   9.625%. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on JULY 1, 1999       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on JUNE 1, 2029       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5665 SOUTHWEST MEADOWS ROAD, SUITE 350, LAKE OSWEGO, OR 97035,       or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $    767.12. This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of JUNE, 2001       and on that day every 6TH   month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND ONE QUARTER    percentage points ( 6.250%) to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

DDS-27H             Page 1 of 3

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.625% or less than 9.625%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND ONE HALF percentage points ( 1.500%) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 16.625%, or less than 9.625%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____     10 MAY 99     (SEAL)
GALEN T. MITCHELL                               DATE

_____     May 10, 99    (SEAL)
KARLA P. MITCHELL                               DATE

Pay To The Order Of
Resource Bancshares ...
... Without Recourse
_____
..., President
Mortgage ...

Pay To The Order Of
CITIZENS BANK AND TRUST COMPANY
Without Recourse
Cindi Callahan
Cindi Callahan, ... Vice President
Resource Bancshares Mortgage Group, Inc.

DDS-27H                        Page 3 of 3

# PREPAYMENT ADDENDUM TO PROMISSORY NOTE
( ALABAMA )

[X] Prepayment Penalty - First ( 2 ) Year(s) of Note

This Addendum is attached to and made a part of the Note to which it is affixed executed by the undersigned (herein "Maker", whether one or more parties). To the extent of any conflict between the provisions of the Note and the provisions of this Addendum, the provisions of this Addendum shall supersede and control the conflicting provisions of the Note. The following provisions are hereby added to the Note:

If you repay your loan before the end of the SECOND Note Year (a "Note Year" consisting of the twelve-month period commencing with the date of the Note and each twelve-month period thereafter occurring during the term of the Note which commences on the anniversary of the date of execution of the Note), Maker may prepay up to, but not in excess of, 20% of the original principal amount of the Note (the "Prepayment Limitation") without penalty. Any prepayment of the principal amount of the Note in excess of the Prepayment Limitation shall be conditioned upon Maker's payment of a prepayment fee equal to the interest that would accrue during a six-month period on the amount of principal that is prepaid which is in excess of the Prepayment Limitation calculated at the rate of interest then applicable to this Note. In the event the maturity of the Note is accelerated for any reason, then the prepayment fee set forth herein shall be due and payable with respect to the portion of the principal balance which is in excess of the Prepayment Limitation.

# NOTICE TO THE BORROWER

DO NOT SIGN THIS LOAN AGREEMENT BEFORE YOU READ IT. THIS LOAN AGREEMENT PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE LOAN AGREEMENT.

Signed for identification:

MAKER:

_____     10 MAY 99
GALEN T. MITCHELL                    DATE

_____     May 10, 99
KARLA P. MITCHELL                    DATE

DDS-TR2